Peter Strojnik, State Bar No. 6464
**STROJNIK PC**
1 East Washington Street Suite 500
Phoenix, AZ 85004
(774) 768-2234

Attorney for Plaintiffs

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| ADVOCATES FOR INDIVIDUALS WITH DISABILITIES FOUNDATION, INC., <br><br> Plaintiff, <br><br> vs. <br><br> Gilbert Plaza Inc., <br><br> Defendant | Case No.: 2:16-CV-02426-DGC <br><br> **PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS** |

Plaintiff Advocates for Individuals with Disabilities Foundation Inc. ("AID"), by and through undersigned counsel, respectfully requests that this Court deny Defendant Gilbert Plaza Inc. ("Defendant") Motion to Dismiss. In addition to its Response to Defendant's Motion to Dismiss ("Response"), AID moves the Court for leave to amend its Verified Complaint pursuant to Fed.R.Civ.P. 15(a)(1)(B) to include Plaintiff David Ritzenthaler a member of AID. Per the Amended Complaint, AID has associational standing to sue on behalf of its members who would otherwise have standing to sue on their own behalf. The following Memorandum of Points and Authorities support AID's Response.

Dated this 19th day of September, 2016.

/S/ Peter Strojnik
Peter Strojnik
Strojnik PC
Lead Attorney for Plaintiffs

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I. INTRODUCTION**

AID is a civil rights claimant. Its primary intent in filing civil rights actions is to provide financial and charitable aid to individuals with disabilities and to ensure compliance with the Americans with Disabilities Act, 42 U.S.C. §§12101 et seq., (the "ADA") and A.R.S. Title 41, Chapter 9, Article 8, §§ 41-1492 et seq.(the "AzDA"). See www.aid.org. Despite backlash from law-breaking landowners, AID whole-heartedly believes that its work and mission serves the disabled, one of the most disenfranchised and oftentimes forgotten communities in the country. AID strongly feels that its work not only serves the disabled individuals that are associated with the organization, but also disabled individuals throughout Arizona.

AID is a "committed [organization who] bring[s] serial litigation advancing the time when public accommodations will be compliant with the ADA". See *Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1061-62 (9th Cir.2007) (per curiam):

> **For the ADA to yield its promise of equal access for the disabled, it may indeed be necessary and desirable for committed individuals to bring serial litigation advancing the time when public accommodations will be compliant with the ADA.** (Emphasis supplied.)

Nonetheless, Defendant brings the current Motion based on AID's (alleged) lack of standing and mootness. As mentioned, AID moves this court to amend its Verified Complaint to include David Ritzenthaler, a member of AID, as a named Plaintiff. Should this Court find that the Complaint, as drafted, fails to confer standing on Plaintiff, the inclusion of David Ritzenthaler as a named Plaintiff would cure associational standing defects.

In compliance with Ariz.L.R.Civ. 15.1(a) and Fed.R.Civ.P. 15(a)(2), AID's Amended Complaint is attached to this Response as "Exhibit 1."

## II. STANDING

### a. A Court Will Look to the Amended Complaint when Reviewing Associational Standing.

This case should not be dismissed for lack of standing because AID has several members/principals who are disabled individuals or have family members who are disabled with mobility impairments. These members include, but are not limited to David Ritzenthaler. These persons reside in the greater Phoenix area, are all motorists who travel on the Valley's streets and they have lawful disability parking permits for their vehicles.

The subject property is located at 529 South Gilbert Road in Mesa, Arizona ("the Property"). The Property does not have proper van-accessible signage. The lack of signage is a deterrent to Mr. Ritzenthaler and other members of AID's use of the Property, because it renders it more difficult for individuals to identify which, if any, parking spots are designated for disabled use and which, if any, parking spots have the correct measurements needed for a wheelchair to enter and exit the vehicle. Members of AID,

would like to and intend to use the Property and the accommodations there, but the lack of necessary signage is a deterrent and barrier to them and their access.

Plaintiff wishes to file for leave of the Court to amend the Complaint to allege the foregoing. Ninth Circuit and United States Supreme Court case law has allowed plaintiffs to amend their complaints if doing so corrects standing issues. In *United Union of Roofers, Waterproofers, & Allied Trades No. 40 v. Ins. Corp. of Am.*, 919 F.2d 1398, 1402 (9th Cir. 1990), the Ninth Circuit found that the denial of leave to amend to cure "standing deficiencies" related to associational standing was an abuse of discretion. "Often a plaintiff will be able to amend its complaint to cure standing deficienc[i]es." Id. At 1402-03. That Court continued that "to deny any amending of the complaint places too high a premium on artful pleading and would be contrary to the provisions and purpose of Fed.R.Civ.P. 15." Id. In *Northstar Fin. Advisors Inc. v. Schwab Investments*, the Ninth Circuit likewise found that "parties may cure standing deficiencies through supplemental pleadings" (under Rule 15(d)). *Northstar Fin. Advisors Inc. v. Schwab Investments*, 779 F.3d 1036, 1044 (9th Cir.)[1]. Similarly, "'when a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction.'" Id. (quoting Rockwell Int'l Corp. v. United States, 549 U.S. 457, 473–74, 127 S.Ct. 1397, 167 L.Ed.2d 190 (2007)).

---

[1] As amended on denial of reh'g and reh'g en banc (Apr. 28, 2015), cert. denied, 136 S. Ct. 240, 193 L. Ed. 2d 133 (2015).

In light of the relevant case law discussed above, with its Amended Complaint, AID will have associational standing to file an action against Defendant seeking to enjoin Defendant's violations of the ADA. Below, AID will discuss its opposition to the arguments made in Defendant's Motion under the assumption that this Court will grant leave to amend the Complaint.

### b. AID Has Associational Standing

The lead case discussing general associational standing is *Hunt v. Washington Apple Advertising Commission*. In its decision, the court held that an association has standing to sue on behalf of its members when its members would otherwise have standing to sue in their own right; the interests it seeks to protect are germane to the organization's purpose; and neither the claim asserted or the relief requested requires participation of individual members in the law suit. *Hunt v. Washington Apple Advertising Commission*, 432 U.S. 333 (1977).

### i. AID's Members Have Standing to Sue in Their Own Right

#### 1. AID's Members Are Deterred From Using the Property

Looking to the Amended Complaint along with relevant case law and statues, AID's members easily have standing to sue in their own right.

Before discussing why Plaintiffs memebrs have standing to sue in their own right, Defendant argues that a particular plaintiff did not suffer an infringement of their rights guaranteed under the ADA. As mentioned above, if this Court allows Plaintiffs to amend its Complaint, the complaint will demonstrate that at least one particular member of AID, David Ritzenthaler, did in fact suffer related to his disability.

Under the most recent ninth circuit case dealing with standing and ADA violations, *Chapman v. Pier One Imports*, the court held that ADA plaintiffs could establish standing "***either*** by demonstrating deterrence, ***or*** by injury-in-fact ***coupled with*** an intent to return to a non-compliant facility" (emphasis added*). Chapman v. Pier One Imports (U.S.), Inc.*, 631 F.3d 939, 944 (9th Cir. 2011).

Important dicta in Chapman states further that:

> [O]nce a disabled individual has encountered or ***become aware*** of alleged ADA violations that deter his patronage of or otherwise interfere with his access to a place of public accommodation, **he has already suffered an injury in fact . . . under Article III.**

*Chapman v. Pier 1 Imps. (U.S.), Inc.*, 631 F.3d 939, 947 (9th Cir. 2011). Members of AID, including Mr. Ritzenthaler, travel throughout the Mesa area, additional members travel in motor vehicles that must park in a van-accessible parking spot, and individual members, including Mr. Ritzenthaler, became aware that the parking lot at the Property does not have proper van-accessible signage. Under *Chapman*, members of AID have suffered an injury-in-fact **once they became aware** that there was inaccessible parking and were then deterred from utilizing the Property.  Therefore, if individual members were to sue individually, they would clearly have standing under *Chapman.*

### ii. The Interests AID Seeks to Protect Are Germane to the Organization's Purpose.

As mentioned before, AID is a civil rights organization. Its primary intent in filing civil rights actions is to ensure ADA and AzDA compliance and to provide financial and charitable aid to individuals with disabilities. Part of AID's charitable arm is to be the voice of the disabled who would otherwise not be heard. AID takes a strong position that

an organization has more resources to fight for the rights of the disabled than perhaps the individuals themselves who may not have the time, means, or courage to litigate on their own.

Case law has also recognized the importance of associations and organizations that act on behalf of others. The doctrine of associational standing recognizes that the primary reason people join an organization is often to create an "effective vehicle for vindicating interests that they share with others." *United Food and Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 134 L. Ed. 2d 758, 116 S. Ct. 1529 (1996). Allowing AID to vindicate the rights of its members will advance the interests of not only other members or AID, but also the disabled community at large.

### iii. Neither the Claim Asserted Nor the Relief Requested Requires Participation of Individual Members In The Law Suit.

While the first two requirements of associational standing are constitutionally rooted, the third is merely prudential. See *United Food & Commercial Workers Union Local 751 v. Brown Group,* 517 U.S. 544, 555, 116 S. Ct. 1529, 134 L. Ed. 2d 758 (1996) (first requirement "can only be seen as itself an Article III necessity for an association's representative suit," second requirement is complementary to first, but third requirement is not constitutional necessity); *Association of Am. Physicians & Surgs. v. Texas Med. Bd.*, 627 F.3d 547, 550 (5th Cir. 2010) (first two prongs address constitutional requirements; third is solely prudential).

In *Hunt*, the court held "So long as this can be established, and so long as the nature of the claim and of the relief sought does not make the individual participation of each

injured party indispensable to proper resolution of the cause, the association may be an appropriate representative of its members, entitled to invoke the court's jurisdiction." 422 U.S., at 511, 95 S.Ct., at 2212. *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. at 342 (quoting *Warth v. Seldin*, 422 U.S. 490, 512, 95 S. Ct. 2197, 2212, 45 L. Ed. 2d 343 (1975).

The *Hunt* Court further explains:

> (W)hether an association has standing to invoke the court's remedial powers on behalf of its members depends in substantial measure on the nature of the relief sought. If in a proper case the association seeks a declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured. Indeed, in all cases in which we have expressly recognized standing in associations to represent their members, the relief sought has been of this kind.

*Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333 at 343, 97 S. Ct. 2434 at 2441(quoting *Warth v. Seldin*, 422 U.S. 490 at 512, 95 S. Ct. 2197 at 2212). AID seeks declaratory relief and an injunction on behalf of its members in the instant case. See Doc. 1, 8:20-28, 9:1-8, 9:13-25. It does not seek damages on behalf of its members, for example, which would require its members to actively participate in the suit to enable the court to determine how much damages should be awarded to each individual member. Via declaration, the Court can easily discern the injuries alleged without further participation of its individual members.

### III. THE DECLARATION OF CHRIS B. DORAN DOES NOT MAKE DEFENDANT'S CLAIMS MOOT

Defendant claims this action should be dismissed because they have voluntarily ceased the alleged ADA and AzDa violations, rendering Plaintiff's claim moot. Unfortunately for

Defendant, Courts have long recognized a "voluntary cessation exception" to mootness. *Rosemere Neighborhood Ass'n v. U.S. EPA*, 581 F.3d 1169, 1173 (9th Cir. 2009). Under this doctrine, when a defendant's voluntary cessation of a challenged activity is the basis for mootness, it becomes the defendant's burden to demonstrate that "subsequent events made it **absolutely clear** that the allegedly wrongful behavior could not reasonably be expected to recur"(emphasis added). *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc*., 528 U.S. 167, 189 (2000)."The **heavy burden** of persuading the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness" (emphasis added). *Id*. This is because "otherwise they would simply be free to 'return to (their) old ways' after the threat of a lawsuit had passed." *Armster v. U.S. Dist. Court for Cent. Dist. of California*, 806 F.2d 1347, 1359 (9th Cir. 1986) (quoting *Iron Arrow Honor Society v. Heckler,* 464 U.S. 67 (1983)).

The declaration of Chris Doran does not meet the strict standard mentioned above. The declaration merely states that the premises contains a certain number of accessible parking spaces, "van accessible signage," and the like. *See* Doc. 1, Ex.1. However, nowhere in the declaration does it say that the Defendant took the necessary steps to *ensure* and make it *absolutely clear* that the violation will never occur again. Nor does the Declaration state *what* changes the Defendant made in order to ensure that a violation never occur again. Therefore, Plaintiffs claims are not moot and this Court retains jurisdiction over its claims.

**IV. CONCLUSION**

In conclusion, this Court should deny Defendants Motion to Dismiss for lack of subject matter jurisdiction. If the Court properly grants Plaintiffs leave to amend its complaint,

Plaintiffs will be able to show that they have associational standing to bring its claims on behalf of its members, including David Ritzenthaler. Further, Plaintiffs claims are not moot. Defendants have the burden of proof to show that it is absolutely clear and almost certain that the violations will not reoccur. The declaration that Defendants included in their Motion to Dismiss failed to do so. As a result, this Court does have subject-matter jurisdiction and should not dismiss Plaintiff's claims.

**RESPECTFULLY SUBMITTED** this 19th day of September 2016.

**STROJNIK PC**

/S/ Peter Strojnik
**Peter Strojnik**
Lead Attorney for Plaintiffs

ORIGINAL of the foregoing filed
September 19, 2016 with COPIES emailed
and mailed to:

**ATTORNEYS FOR DEFENDANTS**

Scot L. Claus (#014999)
sclaus@dickinsonwright.com

Mitesh V. Patel (#031599)
 mpatel@dickinsonwright.com

DICKINSON WRIGHT PLLC
18.50 N. Central Ave., Suite 1400
Phoenix, Arizona 85004-4568

/s/_____